# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                     CASE NO. 8:04-CR-545-T-30EAJ

CESAR HUMBERTO HEREDIA,

    Defendant.
_____/

## **O R D E R**

BEFORE THE COURT is Defendant's letter Motion (Dkt. #332) in which Defendant requests that his judgment be reviewed in light of *U.S. v. Bellaizac-Hurtado.*, 700 F. 3d 1245 (11th Cir. Nov. 6, 2012). The Court notes that Defendant pled guilty to possession with intent to distribute five kilograms or more of a mixture or substance containing a detectable amount of cocaine while on board a vessel subject to the jurisdiction of the United States.

In *Bellaizac-Hurtado*, the Eleventh Circuit held that Congress exceeded its power when it proscribed the defendants' drug trafficking activities which occurred solely in the territorial waters of Panama. Had the conduct occurred in international waters, jurisdiction of the United States would have existed as long as the requirements of the Maritime Drug Enforcement Act were met. *See U.S. v. Tinoco*, 304 F.3d 1088 (11th Cir. 2002); *U.S. v. Estupinan*, 453 F.3d 1336 (11th Cir. 2006).

At the change of plea hearing on January 13, 2005, Defendant admitted he was on board a vessel in international waters when he was detained:

> MR. MULDROW: Your Honor, if the case were to go to trial the United States would establish beyond a reasonable doubt that each of these defendants, Mr. Cesar Humberto Heredia and Mr. Camilo Gongora Riascos, are guilty as charged in Counts One and Two of the Indictment.
>
> The evidence would establish that during October of (sic) 2004, both of these defendants were knowing and willing participants in a drug smuggling conspiracy involving the transportation of a shipment of cocaine in the Eastern Pacific Ocean.
>
> The drug trafficking conspiracy involved the transportation of -- of a cocaine shipment from a location off the coast of Colombia by speed boat with the assistance of refueling vessels who would refuel the go-fast boat along the transportation route to Mexico.
>
> One of those refueling vessels in this case was the Colombian flagged fishing vessel Aventurero. As -- as noted before, the amount of cocaine involved was over five kilograms of cocaine.
>
> Members of the conspiracy included the persons on board the go-fast vessel as well as the fishing vessel Aventurero.
>
> Among the crew members on board the go-fast vessel was the defendant Cesar Humberto Heredia. Among the crew members on board the Aventurero was defendant Camilo Gongora Riascos.
>
> On October 31, 2004, a U.S. Coast Guard helicopter observed and videotaped an unmarked go-fast vessel alongside the Aventurero in the Eastern Pacific Ocean in international waters.
>
> While alongside the Aventurero, the Aventurero, the Aventurero -- the crew of the Aventurero provided fuel to the go-fast vessel in order to assist in the transportation of the cocaine shipment by the crew of the go-fast vessel.
>
> Without the fuel from the Aventurero, the go-fast vessel would not be able to continue its journey to deliver and distribute the cocaine shipment to other persons.

To be clear, at no time does the United States allege that the cocaine was ever on board the Aventurero. Nevertheless, the crew on board the Aventurero assisted and participated in the possession of the cocaine by the go-fast crew and others.

The U. S. Coast Guard intercepted the go-fast vessel, and after the go-fast engaged in evasive actions, the Coast Guard had to fire warning shots and disabling fire in order to stop the go-fast vessel.

When the Coast Guard boarded the go-fast vessel and questioned the crew as to the captain or master of the go-fast vessel, no member of the crew admitted to being the master or captain in order to make a claim of nationality or registry for the vessel. Subsequent investigation determined that Jose Alejandro Centeno was the captain of the go-fast vessel.

The Coast Guard discovered over five kilograms of cocaine on board the go-fast vessel.

As a result of the failure of the crew to acknowledge a master or captain, the go-fast vessel became a vessel without nationality and the vessel and its crew were subject to the jurisdiction of the United States.

All of the crew members on the go-fast vessel were Colombian nationals with the exception of Mr. Cesar Humberto Heredia, who is a Mexican national. No documents or other indicia of nationality were located on the unmarked go-fast vessel.

Because four crew members were Colombians, the Coast Guard contacted the Government of Colombia concerning the nationality of the go-fast vessel. The Government of Colombia could not unequivocally and affirmatively assert that the go-fast vessel was Colombian, which also - - also makes the go-fast vessel without nationality and subject to the jurisdiction of the United States.

After seizing the go-fast vessel and crew, the Coast Guard intercepted the Aventurero, which was now attempting to return to Colombian waters.

When questioned by the Coast Guard, the captain of the Aventurero stated that they were fishing, having left Buenaventura, Colombia on October 15th, 2004, and had approximately 500 kilograms of fish on board.

However, the Aventurero was well outside of any authorized Colombian fishing zone. And upon boarding, the Coast Guard discovered only a few fish, a small quantity of ice - - ice, and fishing equipment that was in poor condition.

On board the Aventurero, the Coast Guard also observed fuel drums, tow lines, hoses and pumps which could be used to transfer fuel to another vessel.

Pursuant to a bilateral agreement between the Government of Colombia and the United States, the Government of Colombia consented to the exercise of jurisdiction by the United States with respect to the Aventurero and its crew. Therefore, the Aventurero and its crew are subject to the jurisdiction of the United States.

Both of the defendants first entered the United States at a point in the Middle District of Florida.

That is all, Judge.

\* \* \* \*

THE COURT: All right, thank you.

Mr. Humberto, did you hear the facts that the prosecutor told us about?

MR. HEREDIA: Yes.

THE COURT: Do you have any disagreement with those facts?

MR. HEREDIA: No.

THE COURT: Were you involved because you chose to be involved with this drug smuggling operation?

MR. HEREDIA: Yes.

THE COURT: Do you have any questions at all about the consequences of your plea or the rights you're giving up?

MR. HEREDIA: No.

>           THE COURT:         How do you wish to plead to Count One of the Indictment?
>
>           Guilty or not guilty?
>
>           MR. HEREDIA:       Guilty.
>
>           THE COURT:         And Count Two?
>
>           MR. HEREDIA:       Yes, guilty.

(Guilty Plea transcript, Dkt. #337, pp. 27-32).

At the sentencing hearing held on April 15, 2005, Defendant stated he had no objections to the factual accuracy of the presentence report. (Sentencing transcript, Dkt. #333, p. 4). Paragraph 9 of the presentence report states:

> On October 31, 2004, a United States Coast Guard (U. S. Coast Guard) helicopter observed and videotaped an unmarked go-fast vessel alongside the fishing vessel, *Aventurero*, in the Eastern Pacific Ocean in international waters. The crew of the *Aventurero* was providing fuel to the go-fast vessel. Based on previous experience, U. S. Coast Guard personnel believed the *Aventurero* was providing fuel to the go-fast vessel in an effort to allow the go-fast vessel to continue to transport and deliver cocaine.

Further, at sentencing, Defendant acknowledged the following:

>           THE COURT:         You may have a seat.
>
>           Mr. Heredia, on January 13th, 2005, you entered a plea of guilty to Count 1 of the indictment, charging you with aiding and abetting in the possession with intent to distribute 5 kilograms or more of cocaine while aboard a vessel subject to the jurisdiction of the United States, in violation of Title 21, United States Code, Section 960(b)(1)(B)(ii), and of Count 2 of the indictment charging you with conspiracy to possess with intent to distribute 5 kilograms or more of cocaine while aboard a vessel subject to the jurisdiction of the United States.
>
>           The court has previously accepted your guilty plea and has adjudged you guilty of those offense. We've now reached the stage in the proceedings

where it's my duty to address certain questions to you and your lawyer, as well as the lawyer for the government. Have you had the opportunity to read and discuss the presentence report?

    THE DEFENDANT:    (through interpreter) Yes, sir.

    THE COURT:    Do you have any objections to the factual accuracy of the report?

    THE DEFENDANT:    (through interpreter) No, sir.

(Sentencing transcript, Dkt. #333, pp. 3-4).

Defendant admitted at his guilty plea hearing and sentencing that at the time of his arrest he was in international waters subject to the jurisdiction of the United States. Therefore, *Bellaizac-Hurtado* is not applicable and affords Defendant no relief.

**ACCORDINGLY**, the Court **ORDERS** that Defendant's letter Motion for review of his case (Dkt. #332) is **DENIED**.

**DONE** and **ORDERED** in Tampa, Florida on September 25, 2013.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
*Pro se* Defendant
Counsel of Record

F:\Docs\2004\04-cr-545 Heredia 332.wpd